**UNITED STATES of America**
v.
**Alden N. WILSON and Frank L. Davis.**
**Cr. No. 1220-67.**

United States District Court
District of Columbia.
April 8, 1968.

Sol Z. Rosen, Washington, D. C., for Alden N. Wilson.

Jerome C. Hancock, Washington, D. C., for Frank L. Davis, Jr.

Thomas Lumbard, Asst. U. S. Atty., for the United States.

## MEMORANDUM AND ORDER

YOUNGDAHL, District Judge.

On April 2, 1968, Alden N. Wilson and Frank L. Davis, Jr., were before this Court for trial on a three-count indictment charging housebreaking, grand larceny, and petit larceny. At this point defendants, who had not made any pretrial motions with respect to their identification, moved to suppress their identification by the complaining witness.[1] A hearing was held with respect to the stationhouse identification of defendants by the complaining witness.

At about 12:30 p. m., on Sunday, August 20, 1967, it is alleged that two men were seen by complainant Paul Anthony trying to take appliances out of an unfinished apartment building at 3539 Jay Street, N. E. Detective William Miller of the Metropolitan Police Force testified that two days later, on August 22, 1967, at about 7:00 p. m., he saw an automobile bearing license tags which had been reported stolen in the August 20 housebreaking. Detective Miller stated that he stopped the car and arrested the defendants for petit larceny of the automobile license tags. In addition to the two defendants, Mr. Wilson's younger brother and a Mr. Charles Haton were also in the car. These four persons were taken to the Fourteenth Precinct stationhouse, and Paul Anthony, the complainant in the alleged housebreaking, was asked to come down to identify them. Paul Anthony testified that, while at the stationhouse, he identified the two defendants as the persons he saw committing the housebreaking on August 20, 1967. Defendants did not have counsel at this identification. There was a conflict in the testimony whether defendants were advised that counsel would be provided if they desired, but, in any event, they did not knowingly and intelligently waive counsel.

This case arose after the June 12 Supreme Court decisions in United States v. Wade,[2] Gilbert v. State of California,[3] and Stovall v. Denno.[4] In Wade and Gilbert, "the Supreme Court held that a suspect must, as a matter of Sixth Amendment right, be afforded the assistance of counsel at a pretrial lineup."[5]

While both Wade and Gilbert refer to post-indictment lineups, a stationhouse identification is an equally critical stage of the prosecution. The majority in Wade impliedly recognized this in its reference to the use of substitute counsel where notification and presence of the suspect's own counsel would result in prejudicial delay.[6] Moreover, three members of the Supreme Court expressly stated that the Wade standards apply "whether before or after indictment or information."[7]

The Government argues that Wade does not set down a per se exclusionary rule and that counsel was not necessary here because the defendant had three independent witnesses present through which to reconstruct the identification process and show whether it

1. These motions should have been filed prior to trial so that the trial of the case would not be delayed. This Court permitted this hearing because to deny it would have prejudiced the defendants themselves.

2. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

3. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967).

4. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967).

5. Wright v. United States, U.S.App.D.C. (No. 20153, decided Jan. 31, 1968) (slip opinion p. 4).

6. See United States v. Wade, 388 U.S. at 237, 87 S.Ct. 1926; Wise v. United States, D.C.Cir., 383 F.2d 206, 209 n. 9 (1967).

7. See United States v. Wade, 388 U.S. at 251, 87 S.Ct. at 1944.

was suggestively conducted or otherwise unfair. This argument overlooks the distinction between lay witnesses and persons trained in the law. The Supreme Court in *Wade* noted this when it stated:

> In any event, neither witnesses nor lineup participants are apt to be alert for conditions prejudicial to the suspect. And if they were, it would likely be of scant benefit to the suspect since neither witnesses nor lineup participants are likely to be schooled in the detection of suggestive inferences. Improper influences may go undetected by a suspect, guilty or not, who experiences the emotional tension which we might expect in one being confronted with potential accusers.[8]

The complainant, Paul Anthony, stated that "he did not know" whether he was told the persons he was being called to view were the suspects. But when he had just reported a housebreaking two days earlier, it is more than likely that he was fully aware of why he was being asked to view the defendants. Moreover, if Mr. Anthony recognized defendant Davis as the man the police allegedly had brought back to the housebreaking for him to identify, then this would be even more suggestive as to defendant Wilson.

It should be noted that this is not an on-the-scene identification like that in Wise v. United States[9] where the fresh identification promoted fairness by assuring reliability. In Wright v. United States, Chief Judge Bazelon, whose dissenting opinion took the position that due process is violated whenever the police *unjustifiably* fail to hold a lineup, carved out an exception for on-the-scene identifications and stated that in *Wise*,[10] "the identification took place at the scene of the offense rather than in the suggestive atmosphere of a police station." [11] In this case there was no compelling reason for not providing counsel and meeting the *Wade-Gilbert-Stovall* standards. The defendants were being held for petit larceny and the identification, already two days after the alleged crime, could have waited until substitute counsel could be obtained.[12] It is clear that this issue arose because the police have not been adequately briefed as to the impact of these recent Supreme Court decisions.

■ This Court is of the opinion that the identification of the defendants by the complaining witness, Paul Anthony, at the Fourteenth Precinct stationhouse has not met the standards set down in the *Wade-Gilbert-Stovall* cases and thus any "in-Court" identification based on the identification at the stationhouse must be suppressed. This Court cannot accept complainant's testimony that he had a "mental picture" of the defendants and that the precinct identification did not color his present recollection or his identification at the preliminary hearing. It is the opinion of this Court that any identification by Mr. Anthony subsequent to the precinct identification is tainted.[13]

This Court expressed no opinion as to the alleged identification of Mr. Davis by Mr. Anthony on August 20, 1967, prior to the precinct identification. The facts of this identification were not brought before this Court at the hearing. Since this case was continued after the hearing was held, the issue of this identification will have to be resolved by the trial judge who is assigned this case for trial.

Wherefore, upon consideration of the testimony presented in open Court, and

---

8. United States v. Wade, 388 U.S. at 230–231, 87 S.Ct. at 1934.

9. D.C.Cir., 383 F.2d 206 (1967).

10. Ibid.

11. Wright v. United States, U.S.App.D.C. (No. 20153, decided Jan. 31, 1968) (Dissent of Bazelon, C. J., at p. 10 n. 2 of slip opinion).

12. See Wright v. United States, note 11 supra, at pp. 7 n. 26, 11, where the feasibility of holding a lineup is put forth as a consideration.

13. See United States v. Wade, 388 U.S. at 241, 87 S.Ct. 1926.

the authorities noted, it is ordered that the defendants' motion to suppress the stationhouse identification by the complainant is hereby granted.